**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LONDELL BOND | : | |
| *Petitioner*, | | |
| v. | : | CIVIL ACTION |
| | | NO. 13-1553 |
| JEROME WALSH;  THE DISTRICT | | |
| ATTORNEY OF THE COUNTY | : | |
| OF PENNSYLVANIA and THE | | |
| ATTORNEY GENERAL OF THE | | |
| STATE OF PHILADELPHIA | : | |
| *Respondents*. | | |

**MEMORANDUM**

**Jones, II    J.**                                                    **November 24, 2020**

**I.    Introduction**

On April 5, 2005, Petitioner Londell Bond was convicted of Murder, Robbery, and

Possession of an Instrument of Crime. As a result, he was sentenced to life in prison. (Trial Tr.

vol. 1, 22-24, May 16, 2005, ECF No. 34.)  Petitioner seeks habeas relief from his state court

convictions for alleged court error, ineffectiveness of trial counsel, and ineffectiveness of PCRA

counsel. The matter was referred to United States Magistrate Judge Lynn A. Sitarski for a Report

and Recommendation ("R&R"). Judge Sitarski recommended denying Petitioner's Habeas

Petition in its entirety, and Petitioner has objected thereto. For the reasons set forth below,

Petitioner's objections shall be overruled.

## II.   History

### A.   Factual Background

The following facts are supported by evidence presented at trial:

On November 18, 2000, Petitioner Londell Bond carried a gun into the B&E Ingram Bar in Philadelphia, Pennsylvania and announced "This is a hold-up."[1] (Trial Tr. vol. 1, 51, 72-77, Mar. 29, 2005, ECF No. 29 at 15, 19-20.) Bar Patron Edward Carter attempted to stop Petitioner, but Petitioner shot Carter in the chest during the altercation. (Trial Tr. vol 1, 79, 84-85, Mar. 29, 2005, ECF No. 29 at 21-23.) As a result of the shooting, Carter died early the next morning. (Trial Tr. vol. 1, 59-61, Mar. 30, 2005, ECF No. 30 at 16-17.)

Before Petitioner could escape, bar owner William Ingram was able to grab the back of Petitioner's sweatshirt,[2] causing it to slip over his head, along with Petitioner's skull cap. (Trial Tr. vol. 1, 81-82, 89, Mar. 29, 2005, ECF No. 29 at 22, 24.) A cigarette lighter was found inside the sweatshirt and was later used to test fingerprints. (Trial Tr. vol. 1, 200, Mar. 30, 2005, ECF No. 30.)

Detective Harris, who was conducting the investigation, received information from two fellow detectives (Bass and Boyle) that led to the inclusion of Petitioner in a photo array. (Trial Tr. vol. 1, 175-177,  April 4, 2005, ECF No. 32 at 31-32.) Witness Larry Lane identified Petitioner from the array. (Trial Tr. vol. 1, 232-33, Mar. 29, 2005, ECF No. 29.) Mr. Lane then identified Petitioner from a police lineup. (Trial Tr. vol. 1, 234-35. March 29, 2005, ECF No. 29 at 50; Trial Tr. vol. 2, 186-89, Mar. 30, 2005, ECF No. 30 at 48-49.)  Upon testing, the

---

[1] Eyewitness William Ingram could not be certain if Petitioner stated "Hold it" or "a holdup." (Trial Tr. vol. 1, 76, Mar. 29, 2005, ECF No. 29 at 20.)
[2] When Mr. Ingram used the term "jacket" during his testimony, he was referring to Petitioner's sweatshirt. (Trial Tr. vol. 1, 90, Mar. 29, 2005, ECF No. 29 at 24.)

fingerprints from the cigarette lighter were found to match Petitioner's fingerprints. (Trial Tr. vol. 3, 98-101, March 31, 2005, ECF No. 31 at 26-27.)  DNA found on the sweatshirt also matched that of the Petitioner. (Trial Tr. vol. 1, 91-94, Apr. 4, 2005,[3] ECF No. 32 at 24-25.)

  **B.**  **Procedural Background**

  The shooting of Edward Carter resulted in two jury trials for Petitioner, the first of which ended in a mistrial. The second jury trial commenced in the Philadelphia Court of Common Pleas on March 29, 2005, during which time the Commonwealth presented physical evidence of the sweatshirt and the lighter, as well as the testimony of both Ingram and Lane, and the authorities who investigated the incident and conducted DNA testing. (Trial Tr. vol. 1, 52-351, Mar. 29, 2005, ECF No. 29 at 14-89; Trial Tr. vol. 2, 4-214, March 30, 2005, ECF No. 30 at 2-55; Trial Tr. vol. 3, 19-173, Mar. 31, 2005, ECF No. 31 at 6-45.) The defense presented an alibi witness—Petitioner's great aunt, Diana Barnes—who claimed Petitioner was working with her in New York the evening of Carter's death. (Trial Tr. vol. 1, 235-96, Apr. 4, 2005, ECF No. 32 at 60-75.) However, the jury ultimately convicted Petitioner of Murder, Robbery, and Possession of an Instrument of Crime, and he was thereafter sentenced to an aggregate term of life imprisonment. (Sent'g Tr. 23-24, May 16, 2005, ECF No. 34 at 7.)

  Petitioner appealed the conviction for a number of reasons. First, Petitioner argued the trial court erred in denying a mistrial when the prosecutor allegedly commented on Petitioner's post-arrest silence. (Appellant Br. 8, ECF No. 9-3.) Second, Petitioner argued the evidence was insufficient to show the killing occurred in furtherance of a robbery. (Appellant Br. 11, ECF No. 9-3.) Finally, Petitioner argued that the verdicts were against the weight of evidence. (Appellant

---

[3] Although April 4, 2005 was the fourth day of trial testimony, the transcript reflects "Trial (Jury) Volume 1" for that date.  (ECF No. 32 at 1.)

Br. 14, ECF No. 9-3.) After concluding there was no prosecutorial misconduct, the evidence

supported the conviction, and that the argument concerning the robbery conviction being against

the evidence was waived due to a failure to raise same in his 1925(b) Statement,[4] the Superior

Court affirmed judgment. *Commonwealth v. Bond*, 1100 EDA 2006, 4-11 (Pa. Super. Feb. 26,

2008); 951 A.2d 1205 (Pa. Super. 2008) (Table), ECF No. 9-4.)  Petitioner sought allocator,

which the Pennsylvania Supreme court denied on July 30, 2008. (*Commonwealth v. Bond*, 173

EAL 2008 (Pa. July 30, 2008); 956 A.2d 431 (Pa. 2008) (Table), ECF No. 9-5.)

Proceeding *pro* se, Petitioner next sought collateral relief through Pennsylvania's Post

Conviction Relief Act (PCRA). (*Pro Se* Pet., ECF No. 9-6.) The PCRA court appointed Attorney

James Bruno to represent Petitioner and after presenting one of the six claims on which

Petitioner initially sought review, a Notice of Intent to Dismiss was issued by the PCRA court.

In objecting to the dismissal, Petitioner raised seven claims of ineffectiveness by trial counsel.

(*Pro Se* PCRA Objs., ECF No. 9-8.)  However, the Petition was ultimately dismissed on

February 18, 2011.

PCRA counsel was relieved of his duties and Attorney Gary Server was appointed, who

appealed the PCRA ruling on behalf of Petitioner, arguing that the PCRA court erred in

dismissing his Petition because trial counsel was ineffectiveness for: (1) failure to object to use

of the term "mug shots" by Larry Lane; (2) failure to object to alleged hearsay of Detective

Harris; and, (3) failure to object to alleged hearsay of the murder victim. (Appellant Br., ECF

No. 9-10.)  However, the Superior Court affirmed the dismissal, finding the claim concerning

---

[4] A Concise Statement of Matters Complained of on Appeal is a brief statement by the appellant
delineating the issues he or she seeks to have considered on appeal.  Rule 1925(b) of the
Pennsylvania Rules of Appellate Procedure provides in part that "[i]ssues not included in the
Statement and/or not raised in accordance with the provisions of this paragraph [regarding
Concise Statement requirements] are waived."  Pa.R.A.P. 1925(b)(vii).

"mug shots" was without merit because there was no evidence the photograph was acquired by reason of prior criminal activity. (*Commonwealth v. Bond*, 732 EDA 2010, 4-6 (Pa. Super. Jan 18, 2012); 43 A.3d 521 (Pa. 2012) (Table), (ECF No. 9-11). Inasmuch as the other claims were not raised in the 1925(b) Statement, they were deemed waived. (*Commonwealth v. Bond*, 732 EDA 2010, 6 (Pa. Super. Ct. Jan 18, 2012), ECF No. 9-11.) However, the court did note the fact that neither comment constituted "hearsay," therefore the claims lacked merit. (*Commonwealth v. Bond*, 732 EDA 2010, 7-10 (Pa. Super. Ct. Jan 18, 2012), ECF No. 9-11.) Petitioner sought *allocator* and the same was denied on August 1, 2012. *Commonwealth v. Bond*, No. 69 EAL 2012 (Aug. 1, 2012), 49 A.3d 441 (Pa. 2012) (Table), ECF No. 9-12.)

Shortly after the Pennsylvania Supreme Court denied review of his first PCRA appeal, Petitioner filed a second PCRA. In said Petition, he raised several issues regarding the propriety of a life sentence on the basis of his age (19 years old) at the time of the crime. (2d PCRA Pet., ECF No. 9-13.) A ruling on this Petition was stayed pending the outcome of *Commonwealth v. Cunningham*, 51 A.3d 178 (Pa. 2012).[5]

On March 25, 2013—while the stay was in place[6]—Petitioner filed the instant Habeas Petition on the bases of three grounds. First, he alleges the trial court erred in denying a request for mistrial based on the prosecutor's comments on post-arrest silence. (Hab. Pet., ECF No. 1) Second, Petitioner claims trial counsel was ineffective for failing to challenge Larry Lane's use

---

[5] The court in *Cunningham* ultimately determined that the holding *in Miller v. Alabama*, 567 U.S. 460 (2012) was not to apply retroactively. *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013).

[6] The stay was lifted and Petitioner's Second PCRA Petition was dismissed on October 4, 2016. (Phila. CCP Crim. Dkt. CP-51-CR-1104831-2003 at 17.) Petitioner filed a Notice of Appeal to the Superior Court and the PCRA Court's decision was affirmed on October 6, 2017. (Phila. CCP Crim. Dkt. CP-51-CR-1104831-2003 at 18.) Petitioner next sought review by the Pennsylvania Supreme Court, which was denied on July 25, 2018. (Phila. CCP Crim. Dkt. CP-51-CR-1104831-2003 at 18.)

of the word "mug shots." (Hab. Pet., 8, ECF No. 1.) Finally, Petitioner maintains PCRA Attorney Bruno was ineffective for failing to raise claims of trial counsel's ineffectiveness for failure to: (1) object to hearsay testimony by Detective Harris; (2) retain a DNA expert or object to alleged misconduct; (3) file a motion to suppress due to a defect in Petitioner's arrest warrant; (4) allege his "actual innocence" from the charge of robbery based on insufficient evidence; (5) allege juror bias; and, (6) object to alleged hearsay testimony of William Ingram. (Hab. Pet. 18, ECF No. 1.)

Petitioner's habeas matter was referred to United States Magistrate Judge Lynne A. Sitarski for a Report and Recommendation. Judge Sitarski ultimately recommended the petition be denied in its entirety. (ECF No. 14.) However, upon review, this Court elected to not adopt and approve the R&R because it was made without the benefit of a state court record. Therefore, the matter was remanded back to Judge Sitarski for reassessment upon receipt of the record. (ECF No. 17.) Judge Sitarski subsequently issued a new R&R in which she again recommended dismissal of all claims presented by Petitioner. (ECF No. 35). Thereafter, Petitioner submitted objections regarding the following issues: (1) Expert Kevin Knox allegedly testified falsely and prosecutorial misconduct was committed regarding this witness; (2) Detective Harris's alleged hearsay testimony; (3) Witness Larry Lane's reference to "mug shots;" (4) the prosecutor's comments concerning Petitioner's post-arrest silence; (5) ineffective assistance of counsel for failing to assert Petitioner's innocence regarding the charge of Robbery due to lack of evidence; and, (6) ineffective assistance of counsel for failure to allege juror bias. (ECF No. 39.) The

Commonwealth has responded to the objections and Petitioner has replied thereto. (ECF Nos. 48, 54.)[7] The matter is now ripe for review.

## III.    Standards of Review

### A.    Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the district court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. §636(b)(1). If there are no objections to the R&R, or when reviewing those portions of the R&R to which no objections are directed, the court, as a matter of good practice, should "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection . . . this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

Although courts must give liberal construction to pro se habeas petitions, "[o]bjections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review." *Gray v. Delbiaso*, Civ. No. 14-4902, 2017 U.S. Dist. LEXIS 101835, at *11 (E.D. Pa. June 30, 2017). "Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled." *Prout v. Giroux*, Civ. No. 14-3816, 2016 U.S. Dist. LEXIS 57085, at *30 (E.D. Pa. Apr. 29, 2016); *see also Guzman v. Rozum*, Civ. No. 13-7083, 2017 U.S. Dist. LEXIS 55661, at *22 (E.D. Pa. Apr. 12, 2017) ("[F]ederal district courts are not required to engage in *de novo* review of objections to a Magistrate's R&R that lack specificity."); *Luckett v.*

---

[7]   Although Document No. 54 is titled "Objections to the Commonwealth's Response," it is essentially a more organized and legible version of the objections Petitioner initially raised in ECF No. 39.

*Folino*, CIVIL NO. 1:09-CV-0378, 2010 U.S. Dist. LEXIS 100018, at *2 (M.D. Pa. 2010)

(denying objections to R&R because "[e]ach of these objections seeks to re-litigate issues

already considered and rejected by [the] Magistrate Judge [ ].").

### B. Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66

("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a

petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a

prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner

will be released from such state custody on the grounds that certain rights accruing to that

prisoner pursuant to the United States Constitution have been violated; habeas corpus motions

pursuant to AEDPA are the only possible means of obtaining this type of relief from state

custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d

Cir. 2001).

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-

keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition.

These procedures were enacted to support the policy of creating finality with respect to state and

federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

judgment of a state court shall not be granted unless it appears that the applicant has exhausted

the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1); see also *Houck v.

Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("[A] district court ordinarily cannot grant a petition for

a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless

the petitioner first has exhausted his available remedies in state court.") (citing 28 U.S.C. §

2254(b)(1)). To accomplish this, federal habeas claims must first be "fairly presented" to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). A claim is deemed "fairly presented" when its "factual and legal substance" is put before the state courts "in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The burden of proving exhaustion always rests with the petitioner. *Coady*, 251 F.3d at 488 (*citing Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)). Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, the "prejudice" element requires the "petitioner [to] prove 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 193 (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)). Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### C.    Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*,

680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court

judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if: (1) the

state court's adjudication of the claim "resulted in a decision contrary to, or involved in an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States;" or, if (2) the adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d)(1)-(2). "While a factual determination by a state court is

presumed to be correct under 28 U.S.C. § 2254(e)(1), a petitioner may rebut this presumption

clear and convincing evidence." *Sileo v. Rozum*, Civ. No. 12-3803, 2015 U.S. Dist. LEXIS

158463, at *52 (E.D. Pa. Nov. 23, 2015). Additionally, when a claim has been adjudicated on the

merits in state court, federal habeas review is limited to the record before the state court. *Cullen

v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

**D.      Ineffective assistance of counsel**

The Sixth Amendment right to counsel "is the right to effective assistance of counsel."

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prove that counsel was ineffective,

Petitioner must establish that: (1) counsel's performance was constitutionally deficient; and (2)

that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Deficient performance "requires showing that counsel made errors so serious that he or she was

not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id*. In

essence, Petitioner must show that "counsel's representation fell below an objective standard of

reasonableness" under prevailing professional norms. *Id*. at 688. Petitioner must overcome the

presumption that, under the circumstances, the challenged action "might be considered sound

trial strategy." *Id*. at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice

requires showing that counsel's errors were serious enough to deprive the defendant of a fair

trial. *Id.* at 687.

It is well settled that counsel cannot be deemed ineffective for failing to raise a meritless

objection. *See Leach v. Capozza*, No. 19-3021, 2020 U.S. Dist. LEXIS 43880, at *38 (E.D. Pa.

March 11, 2020) ("[T]rial counsel cannot be found ineffective for failing to raise a meritless

objection.") (*citing United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

## IV    Discussion

### A.    Claims denied on the merits

#### 1.    The Trial Court Did Not Err by Not Declaring a Mistrial Based on the Prosecutor's Comments Concerning Alibi Witness

Petitioner's objects to the magistrate's recommendation to dismiss the claim that the trial

court erred in denying a mistrial based on the prosecutor's comments on whether Petitioner

contacted the alibi witness. Specifically, he argues: (1) the prosecution's comments did not

concern the actions of alibi witness Diana Barnes, but his post-arrest silence; (2) a single

comment on petitioner's post-arrest silence is a deprivation of due process; and, (3) such a

comment cannot be remedied by curative instructions. (Objs. 9-10.)

Petitioner first argues that the prosecution's comments had nothing to do with the actions

of Barnes, but on Petitioner's right to remain silent. (Objs. at 9.) This was the exact argument

made in the original Petition. (Hab. Pet. 14, ECF No. 1.) Absent any specific allegation of error

pertaining to a magistrate's ruling, issues that were previously argued and considered by the

magistrate judge are not entitled to *de novo review*. *Gray,* 2017 U.S. Dist. LEXIS 101835 at *11.

Inasmuch as Petitioner points to no specific error but instead, claims the magistrate "relied on the

unreasonable conclusions of the Superior Court" and erroneously stated that "nothing in the

constitution shields a defendant from a prosecutor's fair attempt to discredit a witness[,]" his

claim is not entitled to *de novo* review.  (Objs. 9, ECF No. 39 at 9.)  Specifically, Petitioner's first assertion is presented in boilerplate fashion, and his second assertion pertains to an accurate restatement of law by the Magistrate.  Therefore, the only question regarding this objection is whether the Magistrate's conclusion constitutes plain error.

The comment in question is as follows: "In addition, [Petitioner], from the date of his arrest, until the summer of '04, writes, calls, does anything to [Ms.] Barnes to say, I was living with you and working for you, never, ever. Why?" (Trial Tr. vol. 1, 119, Apr. 4, 2005, ECF No. 32 at 31.) Judge Sitarski found that the Superior Court's conclusion did not misapply federal law and did not make an unreasonable determination on the facts in its finding that the prosecutor's comments do not violate *Doyle*[8] or *Griffin*.[9] (R&R 14). This is because the prosecutor was not commenting on the Petitioner's silence concerning post-arrest questioning, but on the credibility of the alibi in light of lack of communication. (R&R 14.) She further writes that *Griffin* prohibits a prosecutor from telling the jury that a defendant's silence is evidence of guilt and that *Doyle* prohibits a prosecutor from impeaching a defendant's testimony with their silence following *Miranda* warnings; however, neither prevent a prosecutor from questioning the testimony of a witness. (R&R 14 n.6-7.) There is no plain error in the finding that the prosecution's comment was not a comment on Petitioner's post-arrest silence, but on the credibility of the alibi testimony. Such a comment is not violative of the objectives set forth in *Griffin* or *Doyle*. Accordingly, Petitioner's rights were not violated by the comment, and the Trial Court did not err in denying a mistrial.

---

[8] *Doyle v. Ohio*, 426 U.S. 610 (1976) (holding that a petitioner's silence after receiving Miranda warnings cannot be used to impeach their testimony).
[9] *Griffin v. California*, 380 U.S. 609 (1965) (holding that the prosecution cannot comment on the silence of the accused).

Assuming *arguendo* the prosecution's comments could be considered to focus on Petitioner's silence, Judge Sitarski also concluded that the comment was remedied when the trial judge issued a curative instruction to the jury. (Trial Tr. vol. 1, 134, Apr. 4, 2005, ECF No. 32.) However, Petitioner maintains that the single comment was enough to violate *Doyle* (and therefore, his due process rights) and that curative instructions are insufficient to remedy the violation. (Objs. 10.)

In support of his claim, Petitioner cites three cases from other circuits. Two of these cases are plainly inapposite. *Remigio* held that although the prosecutor's comments before the jury were clearly erroneous, the error was deemed harmless when viewed in the context of *all* the evidence presented against the defendant. *United States v. Remigio*, 767 F.2d 730, 735-36 (10th Cir. 1985). *Elkins* involved two separate comments; one of which was deemed harmless by reason of the court's curative instruction, and the other of which was deemed harmful because the appellate court could not conclude that "the [trial] court's *general* instruction to the jury at the close of the trial that the silence of a defendant in custody may not be considered as evidence of guilt adequately cured the effects of the repeated *Doyle* violation." *United States v. Elkins*, 774 F.2d 530, 539 (1st Cir. 1985) (emphasis added). Lastly, *Morgan* held that the curative instruction alone did not remedy the prosecution's error; however, that—in and of itself—was not cause for a mistrial.  Instead, the appellate court said it "must also consider whether, in light of all the circumstances, the incident was so insignificant as to be harmless beyond a reasonable doubt." *Morgan v. Hall*, 569 F.2d 1161, 1168 (1st Cir. 1978).  After doing so, the court determined the error was not harmless.  *Id.* at 1169.

Notwithstanding these holdings, review of Third Circuit authority clearly provides that "there may be no *Doyle* violation where the trial court sustains an objection to the improper

question and provides a curative instruction to the jury, thereby barring the prosecutor from

using the silence for impeachment." *Government of Virgin Islands v. Davis*, 561 F.3d 159, 164

(3rd. Cir. 2009) (citing *Greer v. Miller*, 483 U.S. 756, 764-65 (1987)).  In the present case, the

trial judge clearly barred the prosecution from using silence as evidence with the instruction:

"any comments that were made by the prosecutor regarding what happened to the defendant after

his arrest and concerning the alibi witness must be disregarded." (Trial Tr. vol. 2, 134, Apr. 5,

2005,[10] ECF No. 33.) This instruction clearly prohibited the jury from using the prosecution's

comment in their assessment. *See Com. v. Cash*, 635 Pa. 451, 484 (Pa. 2016) (stating that the

jury is presumed to follow the court's instructions).  Moreover, review of the record *in toto*

overwhelmingly established Petitioner's guilt.  Accordingly, the objection is without merit.

### 2. Trial Counsel Was Not Ineffective For Not Objecting to Mr. Lane's Use of  the Term "Mug Shot"

Witness Larry Lane used the term "mug shot" on three occasions to describe Petitioner's

photo in the photo array. (Trial Tr. vol. 1, 232, 294, 304, March 29, 2005, ECF No. 29.) Upon

collateral review, the PCRA Court concluded that references to photographic identification can

only be prejudicial if the jury could reasonably infer that the accused had engaged in prior

criminal activity, and the appellate court affirmed this decision. (*Bond*, 732 EDA 2010 at 5-6,

ECF No. 9-11) (citing *Commonwealth v. Cambridge* 563 A.2d 515, 517 (Pa. Super. 1989)). The

Superior Court further held that without testimony as to how the photos became part of the array,

the most the jury could infer is that defendant had contact with the police, and not necessarily a

prior record or conviction. (*Id.*) (quoting *Commonwealth v. Lawrence*, 596 A.2d 165, 169 (Pa.

Super. 1991), *abrogated on other grounds by Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011)).

---

[10] Although this occurred on the fifth and final day of trial, the transcripts for this day are labeled
"Trial (Jury) Volume 2."  (ECF No. 33.)

Judge Sitarski concluded that these were not unreasonable determinations because the photo itself does not imply Petitioner had been convicted of a crime. (R&R 17.)

Petitioner objects to the R&R's findings regarding this issue for several reasons. First, he claims mere use of the term "mug shot" informs the jury of his past record, stripping him of his presumed innocence. (Objs. 7-8.) To support this contention, Petitioner points to dictum from *Hines*, which did not involve the use of mug shots. *United States v. Hines*, 470 F.2d 225, 229 (3d Cir. 1972). (Objs. 7.) Although *Hines* cites to *Reed*, which did involve mug shots, *Reed* was clearly distinguishable in that a witness testified before the jury that "[the police] had some pictures *from the prison* they hadn't shown us." *United States v. Reed*, 376 F.2d 226, 228 (7th Cir. 1967) (emphasis added). Again, such is not the situation here. Last, Petitioner relies upon *Reiss* in support of his argument that it is error to testify that the defendant was identified from a group of mug shots or photographs that came from the police. (Objs. 7-8.) *Commonwealth v. Reiss*, 468 A.2d 451, 453 (Pa. 1983). The issue before the court in *Reiss* did not involve mug shots, thereby rendering its assessment inapplicable to the case at bar. Instead, use of the term "mug shot" has been deemed permissible when—such as in this case—"[t]he record demonstrates no link between [a witness's] use of 'mug shot' and any prior criminal history of Petitioner. There was thus no basis for the jury to conclude that Petitioner had a criminal history." *Smith v. Johnson*, Civil Action No. 16-1373, 2019 U.S. Dist. LEXIS 85267, at *19 (D. N.J. May 21, 2019).

Notwithstanding the foregoing, these claims by Petitioner are again the same as those initially presented to the Magistrate. In his original Habeas Petition, Petitioner argued that the term "mug shot" prejudiced him, in that it informed the jury of prior contact with police (stripping him of the presumption of innocence), stated that the state court adjudication to the

claim was unreasonable under 2254(d)(1), and argued that under *Commonwealth v. Reiss*, "it is error for a witness to testify that he identified a defendant from a group of mug shots or photographs from a police file." (Hab. Pet 13-16). In his objections, Petitioner reiterates these same arguments to establish the Magistrate erred in her analysis.[11]  Because Petitioner is not raising any specific error with the Magistrate's ruling, said claims are not entitled to *de novo* review, and the only question is whether the Magistrate's findings are in plain error.

Judge Sitarski concluded that the state court decision was not unreasonable because the Petitioner has not shown that the passing references to "mug shots" was prejudicial. (R&R 17). To that end, Judge Sitarski cites *Commonwealth v. Shawley* and *Martinez v. Shannon* for the proposition that references to "mug shots" do not necessarily equate to the fact that an individual has previously been convicted of a crime, therefore the Superior Court was reasonable in determining that the passing references to "mug shots" did not violate due process. (R&R 17.)

In *Shawley*, two comments were at issue: (1) testimony stating the police department had records indicating physical characteristics of the defendant; and, (2) a passing remark that the defendant had been released from prison prior to the trial at issue. *Com. v. Shawley*, 563 A.2d 1175, 1177 (Pa. 1989). The court concluded that the references were not prejudicial, stating: "the mere fact that some record concerning a defendant (such as a mug shot) exists on file at the police department does not of itself reasonably imply that the defendant has been convicted of a

---

[11] Petitioner asserts in boilerplate fashion that Judge Sitarski's conclusion that the Superior Court's finding was reasonable, is incorrect under 28 U.S.C. §2254(d). (Objs. 7-8.) In doing so, he objects to the Magistrate's comparison of his case to those of *Martinez v. Shannon*, Civil Action No. 06-2657, 2007 U.S. Dist. LEXIS 70154 (E.D. Pa. June 29, 2007) and *Commonwealth v. Shawley*, 563 A.2d 1175 (Pa. 1989).  (Objs. at 8.)  However, just as in *Martinez,* Petitioner here offers no specifics to show how, in light of all of the other evidence presented against him, counsel's failure to object to use of the term "mug shot" had an effect on the outcome and thereby caused prejudice.

crime." *Id.* at 1179.  Instead, "we must rely upon the common sense of the jurors, their commitment to their oath, fundamental fairness and the implacable logic that the *mere possession by the police of one's photo does not prove a prior conviction or the present accusation.*"  *Shawley*, 563 A.2d at 1178 (quoting *Commonwealth v. Brown*, 512 A.2d 596, 599 (Pa. 1986) (emphasis in original).

In *Martinez*, defense counsel used the word "mug shot" to challenge a police officer's testimony. *Martinez v. Shannon*, Civ. A. No. 06-2657, 2007 U.S. Dist. LEXIS 67654 at *7 (E.D. Pa. Sept. 12, 2007). The court found that because the defense had a strategic reason for use of the word "mug shot," it was not a violation of *Strickland*. *Id.* at *8-9.  Petitioner's objection concerning *Martinez* is accurate, inasmuch as his case is distinguishable. The court in *Martinez* did not decide whether the phrase "mug shot" created an unreasonable inference in that particular case; rather, counsel's use of the word was deemed not to be a violation of *Strickland* for other reasons. Nevertheless, this does not change the result for Petitioner herein.  The holding in *Shawley* is directly applicable to this case. References to the defendant's possible past conviction in *Shawley* were much more obvious than the passing references in Petitioner's case, yet the court still found the defendant had not been prejudiced.  *Shawley*, 563 A.2d at 1179.

In this case, the Superior Court reasoned that absent testimony on how the photo became part of the police files, the jury cannot infer the defendant had a prior record or conviction. (*Commonwealth v. Bond*, 732 EDA 2010, 5 (Pa. Super. Ct. Jan. 18, 2012), ECF No. 9-11) (citing *Commonwealth v. Cambridge*, 563 A.2d 515, 517 (Pa. Super. 1989)).There is no such testimony in the present case. Further, as Judge Sitarski properly concluded, Petitioner has not shown that he was prejudiced as a result of these specific references. Therefore, the second prong of *Strickland* has not been met, and trial counsel cannot be deemed ineffective. There is no clear

17

error in the R&R. Accordingly, Petitioner's objections regarding use of the phrase "mug shot" shall be overruled.

### B. Procedurally Defaulted Claims – Failure to Include in 1925(b) Statement

The remainder of Petitioner's habeas claims are procedurally defaulted. Two of these claims, both concerning hearsay, were presented to the court.  However, Petitioner failed to include them in Statement of Matters as required by Rule 1925(b) of the Pennsylvania Rules of Appellate procedure. (*Bond*, 372 EDA 2010 at 6, ECF No. 9-11) (citing Pa. R.A.P. 1925(b)(4)(vii); *Commonwealth v. Hill*, 609 Pa. 410, 427 (Pa. 2011)).

Claims that are waived for failure to include them in the 1925(b) Statement are procedurally defaulted; therefore, habeas review is precluded. *See Buck v. Colleran*, 115 F. App'x. 526, 528 (3rd Cir. 2004). As stated earlier, a federal court may only hear defaulted claims if the prisoner can demonstrate cause for the default and actual prejudice as a result of an alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To show prejudice, Petitioner must demonstrate that these errors worked to his actual and substantial disadvantage. *Werts*, 228 F.3d at 192-93.  Petitioner has failed to meet this burden.

### 1. Detective Harris's Comment Did Not Constitute Hearsay

Petitioner objects to the R&R concerning Detective Harris's alleged hearsay. The challenged comment was an explanation by Detective Harris regarding his inclusion of Petitioner's photo in the array based upon information obtained from two fellow Detectives, Bass and Boyle. (Trial Tr. vol. 1, 175-77, Mar. 29, 2005, ECF No. 29 at 45-46.) Petitioner argues that

under *Crawford*,[12] he has a right to confront the individual(s) who informed the detective about his involvement. (Objs. 5-6.) Petitioner further argues his trial counsel failed to object to protect that right, and was therefore ineffective. (Objs. 5-6.) These exact arguments were presented in the original Habeas Petition and were fully considered by Judge Sitarski.  Because Petitioner points to no specific error in the R&R other than citing to the pages where these issues were addressed and "rehashing" the same issues and arguments here, they are not entitled to *de novo* review. (Hab. Pet. 32-36, ECF No. 1). The only question is whether the Magistrate's findings on these issues are in plain error.

Judge Sitarski concluded that the Superior Court's finding was proper because the testimony in question did not constitute hearsay. No out-of-court statement was introduced into evidence, nor was this information produced to prove the truth of an asserted statement. (R&R at 18) (citing Pa. R.E. 801(c)). Because the statement was not introduced, *Crawford* is inapplicable. Therefore, trial counsel cannot be deemed ineffective for failing to object to the testimony. There is no plain error here.

Moreover, Detective Harris did not reference the information from Detectives Bass and Boyle to prove the truth of anything, but instead, used it merely to explain how Petitioner's photo became a part of the array shown to Mr. Lane. (Trial Tr. vol. 1, 175-77, April 4, 2005, ECF No. 32 at 46.) Further, he did not share any statement from Detectives Bass and Boyle; the prosecutor specifically asked him not to, and he complied. (Trial Tr. vol. 1, 176, April 4, 2005, ECF No. 32 at 45.)

---

[12] *Crawford v. Washington*, 541 U.S. 36 (2004) (holding that out-of-court statements used to prove the truth of the matter are generally inadmissible without an opportunity to cross-exam the declarant).

Under *Crawford*, testimonial statements from witnesses who do not appear at trial are barred by the Sixth Amendment. *Crawford,* 541 U.S. at 53-54. Here, however, Detective Harris merely stated that the information received from Detectives Bass and Boyle led to the development of the photo array. He did not share their statements, nor did he reference them to prove the truth of any matter asserted. Accordingly, no plain error  has been committed. Inasmuch as Petitioner has not sustained his burden under the AEDPA's procedural default standard and because the issue nevertheless fails on the merits, the objection shall be overruled.

##### 2.      Testimony of William Ingram Does Not Constitute Hearsay

Although Petitioner has not objected to the entire recommendation to dismiss the claim of trial counsel's ineffectiveness, this Court shall review his initial claim of alleged hearsay by witness William Ingram for plain error.

William Ingram testified he heard the Petitioner say: "Hold it," and the victim say: "Oh no, you don't. Not in here." (Trial Tr. vol. 1, 75-77, Mar. 29, 2005, ECF No. 29.) The Superior Court found this testimony did not constitute hearsay because it was admissible under a present sense impression (Pa.R.E. 803(1)) or an excited utterance (Pa. R.E. 803(2)). (*Bond*, 372 EDA 2010 at 9, ECF No. 9-11). The R&R concluded this was a reasonable determination. Judge Sitarski continued the analysis, finding that the testimony would not violate *Crawford* because the victim's statements were not testimonial. (R&R at 20) (citing *U.S. v. Hinton*, 423 F.3d 355, 360 (3rd Cir. 2005). Because the statement was not hearsay in that it was admissible under Pennsylvania law and did not violate *Crawford*, counsel could not be ineffective for not challenging same. (*Id.*). There is no plain error in this conclusion.

Ingram's testimony does in fact fall under the "present sense impression" [13] and the "excited utterance"[14] exceptions to hearsay.  Ingram was present at the event, and the victim's testimony was an excited utterance caused by the event of being robbed at gunpoint. These are clear exceptions to the hearsay rule. Counsel cannot be deemed ineffective for not objecting to a meritless claim. *See Werts v. Vaughn,* 228 F.3d 178, 203 (3rd Cir. 2000) (finding counsel cannot be deemed ineffective for failing to raise a meritless claim). Therefore, the Magistrate's assessment of this issue as contained in the R&R is not in plain error.

### C.   Procedurally Defaulted Claims Not Presented to the State Courts

#### 1.   Ineffective Assistance of Trial Counsel & Prosecutorial Misconduct Regarding DNA Evidence

Petitioner next objects to the Magistrate's recommendation to dismiss his claim regarding trial counsel's failure to retain a DNA expert or object to the testimony of DNA Expert Kevin Knox. Petitioner claims the R&R does not address his complaint regarding Knox's statement at trial that Petitioner was a "DNA match" and how it was false and contrary to his two lab reports. (Objs. 2.) Petitioner further claims the prosecution committed misconduct when it used the same language of "DNA match" as used by Knox, and "bolstered" this "false" evidence to the jury during closing arguments.  (Objs. 2-3.) Lastly, Petitioner objects to the Magistrate's finding he was not prejudiced by trial counsel's failure to retain an independent expert or object to the testimony of Knox due to the fact the physical evidence contradicted his alibi witness's testimony. (Objs. 4-5.)

---

[13] *See* Pa. R.E. 803(1) (stating that a present sense impression is "a statement describing… an event or condition made while the declarant was perceiving the event…").

[14] *See* Pa. R.E. 803(2) (stating that an excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition).

Mr. Knox presented the jury with an extensive primer on how DNA is tested, and meticulously went through his analysis of each of the samples from clothing, blood, and hair, that were retrieved from the scene by police and tested as evidence in this case. (Trial Tr. vol. 1, 65-145, Apr. 4, 2005, ECF No. 32 at 18-38.) At one point during his testimony, the following exchange occurred with regard to the findings pertaining to a sweatshirt that was tested:

> Q.   [I] believe you mentioned that there were a total of seven sites, is that correct, where there were matches that were made?
>
> A.   Yes, Sir.

(Trial Tr. vol. 1, 91, Apr. 4, 2005, ECF No. 32 at 24.)

Both DNA reports showed the same information pertaining to the genetic markers found in Sweatshirt Area B. (09/09/2004 DNA Rep., ECF No. 9-6 at 51; 03/28/2005 DNA Rep., ECF No. 9-6 at 52.) Specifically, both reports show an exact match on genetic markers 1, 3, and 7, and a "lighter intensity" match on markers 2, 4, 6, and 8. (*Id.*) The latter DNA report further concluded "Londell Bond is included as a source of the major component of this [DNA] mixture" with regard to Sweatshirt Area B, markers 1 through 4 and 6 through 8. (03/28/2005 DNA Rep., ECF No. 9-6 at 52.) Therefore, the statement Knox made is *not contrary* to this finding. Inasmuch as the testimony at trial was not false, there was no prosecutorial misconduct and trial counsel cannot be deemed ineffective for failing to object thereto. Accordingly, Petitioner's objection shall be overruled.

With respect to Petitioner's claim that he was prejudiced by counsel's failure to obtain an independent DNA expert, this too lacks merit. Petitioner argues he was prejudiced, in that the Commonwealth's DNA evidence dismantled his defense. (Objs. 5.) However, the relevant question under *Strickland* is whether the result of the proceeding would have been different if the jury heard another expert's testimony; not whether the testimony would have supported

Petitioner's version of the facts. *Jacobs v. Horn*, 395 F.3d 92, 109 (3d Cir. 2005). Petitioner

points to nothing that a second DNA expert could provide that would change the outcome.

Assuming *arguendo* a different DNA expert could question the clear data provided by Knox, the

sweatshirt was not the only evidence presented against Petitioner. Eyewitness testimony and a

cigarette lighter with Petitioner's fingerprints on it weighed heavily against Petitioner. Moreover,

the alibi testimony presented by the defense was wrought with inconsistencies and was not

corroborated. (Trial Tr. vol 1, 258-290, Apr. 4, 2005, ECF No. 32 at 66-74.)  As such, Petitioner

fails to overcome the presumption that trial counsel's choice to not retain a DNA expert and

instead cross-examine Knox was a sound strategy. *See Strickland* 466 U.S. at 690 (quoting

*Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

      Because Petitioner cannot show prosecutorial misconduct or that trial counsel's actions

fell below an objective standard of reasonableness, his objection shall be overruled.

### 2.   "Actual Innocence" Regarding Robbery

      Petitioner next objects to the Magistrate's finding that because trial counsel did challenge

the sufficiency of the evidence on appeal and made the points Petitioner claims should have been

made on appeal, PCRA counsel cannot be ineffective for failing to argue "actual innocence."

(R&R 23-24.) The Magistrate further concluded the claim was not substantial because there was

sufficient evidence at trial to support Petitioner's conviction.  (R&R 23-24.)

      In support of his claim, Petitioner argues that the issue raised on appeal only involved

"malice" and not "lack of evidence of the robbery." (Objs. 11.) He further claims the evidence

was insufficient because no witness testified they were personally robbed. (Objs. 11.) Instead, he

claims the only witness to testify to a robbery was Larry Lane, who—again—did not testify he

was robbed.  (Objs. 11.) Therefore, Petitioner argues the elements necessary to prove this offense

were not met, thereby violating *In Re Winship*.[15]  Lastly, Petitioner asserts the claim is

"substantial" because his conviction could not stand without the required evidence. (Objs. 11.)

PCRA counsel did in fact argue that the evidence was insufficient to support Petitioner's

conviction for Murder of the Second Degree because the killing was not in furtherance of a

robbery.  (Appellant Br. 11-12, ECF No. 9-3.) The Superior Court examined this claim and

found the evidence was sufficient to convict Petitioner for murder in furtherance of a robbery.

(*Commonwealth v. Bond*, 1100 EDA 2006 at 6-7, ECF No. 9-4).[16] As Judge Sitarski correctly

concluded, PCRA counsel cannot be ineffective for failing to raise a meritless argument that has

already been addressed. (R&R at 24). Further, this Court may not reassess the evidence, but

instead, must determine whether a rational trier of fact could have found the essential elements of

the offenses beyond a reasonable doubt, upon viewing the evidence in a light most favorable to

the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). This burden has been met.

Because Petitioner has failed to demonstrate he is "actually innocent" of robbery, or that he was

prejudiced as a result of any alleged ineffectiveness, his objections shall be overruled.

### 3.  Juror Bias

Petitioner's next objection pertains to trial counsel's alleged ineffectiveness for failing to

challenge a juror's potential bias. The Magistrate concluded that the trial court adequately

questioned the juror on her ability to be impartial, and found no partiality. (R&R 24-26.)

However, relying on *U.S. v Poole*, Petitioner argues "if we were to assume, *arguendo* the

---

[15] *In re Winship*, 397 U.S. 358, 364 (1970) (holding "[the] Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

[16] Petitioner does not appear to be aware of the "*attempt* to commit" provision of 18 Pa.C.S.A. § 2502(d).  Announcing a hold-up and directing a patron to "give me every mother fucking thing you have" while brandishing a gun before being grabbed, constitutes an attempt to commit robbery. (Trial Tr. vol 1, 199-200, 204, 208-210, March 29, 2005, ECF No. 29 at 51-54.)

demonstrated presence of a juror who once been a robbery victim, it would be difficult to hold

that such a juror was capable of objectivity." (Objs. 12) (quoting *U.S. v. Poole*, 450 F.2d 1082,

1084 (3rd Cir. 1971)). To that end, Petitioner argues that a person who was threatened with a

deadly weapon and robbed would be biased towards one accused of robbery and "unlikely to

forgive and forget." (Objs. 12.) Further, Petitioner claims Judge Sitarski "completely

overlooked" trial counsel's ineffectiveness under *Strickland* in not using a preemptory strike or

moving to strike for cause. (Objs. at 12.) Lastly, he argues PCRA counsel was ineffective for

failing to claim that trial counsel was ineffective. (Objs. 13.)

The first two of these arguments were directly made in the original Habeas Petition and

were considered by the Magistrate. (Habeas Pet. 40-44, ECF No. 1; R&R 26). Although

Petitioner cites to that portion of the R&R in which a discussion of the issues is found, he claims

in wholesale fashion that the Magistrate's ruling was incorrect.  Therefore, these objections are

not entitled to *de novo* review and the only question is whether the R&R was in plain error.

Judge Sitarski began her analysis by distinguishing two types of bias: actual and implied.

(R&R 25.)  In conducting her assessment of this issue, she reviewed the trial court's questions to

the juror, as well as the juror's answers thereto.  Upon doing so, Judge Sitarski concluded there

existed no basis upon which implied or actual bias was to be found.  Specifically, in giving

deference to the trial court, the Magistrate concluded that the juror's answers to the court's

questions were sufficient to alleviate any concerns of bias.  (R&R 26) (citing *Wainwright v. Witt*,

469 U.S. 412, 428 (1985)).  She further found that previously being the victim of a crime did not

constitute an "extreme situation" for purposes of juror disqualification on the basis of implied

bias. (R&R 26) (citing *United States v. Calabrese*, 942 F.2d 218, 227, n.3).

Upon independent review of the issue, this Court finds the juror made no statements that demonstrated partiality. (Trial Tr. vol. 1, 126-27, March 28, 2005, ECF No. 28 at 33.)  As such, there is no plain error in the Magistrate's ultimate determination that the trial court did not err in this regard.   This claim by Petitioner is not substantial, nor can it be said to have prejudiced Petitioner. Accordingly, his objections regarding same shall be overruled.

With respect to Petitioner's claim that the Magistrate overlooked the issue of trial counsel's alleged ineffectiveness for failing to object or strike the juror, the same is entitled to *de novo* review.  Nevertheless, it is without merit.  As stated earlier, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203. The argument that the juror was biased is without merit. Therefore, trial counsel cannot be deemed ineffective for failing to object or strike the juror. Thus, the objection shall be overruled.

## V.    Conclusion

For the reasons set hereinabove, the Petitioner's objections shall be overruled.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II    J.

26